```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SALON FAD, et al.,                      :
                    Plaintiffs,         :
                                        :
          -v-                           :
                                        :    10 Civ. 5063 (DLC)
L'OREAL USA, INC., CONAIR CORPORATION,  :
FAROUK SYSTEMS, INC., JOHN PAUL         :    OPINION & ORDER
MITCHELL SYSTEMS, SEXY HAIR CONCEPTS,   :
LLC, THE PROCTOR AND GAMBLE COMPANY,    :
and TIGI LINEA, LP,                     :
                    Defendants.         :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs:
James T. Southwick
Christopher M. Hogan
Richard W. Hess
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002

For Defendant L'Oreal USA, Inc.:
Catherine Anne Williams
Frederick Burdett Warder III
Paterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

For Defendants Conair Corporation and TIGI Linea, LP:
Lewis Richard Clayton
Susana Michele Buergel
Andres N. Madrid
Scott Jonathan Sholder
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

For Defendant Farouk Systems, Inc.:

Scott David Gelin
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

Anthony Frank Matheny
Greenberg Traurig, LLP
1000 Louisiana Street
Houston, TX 77002

For Defendant John Paul Mitchell Systems:
John A. Furutani
Furutani & Peters
350 W. Colorado Blvd. Suite 200
Pasadena, CA 91105

Michaeline Abate Re
Law Offices of Michaeline A. Re
350 W. Colorado Blvd. Suite 200
Pasadena, CA 91105

Robert P Knapp , III
Mulholland & Knapp, LLP
641 Lexington Avenue, 20th FLoor
New York, NY 10022

For Defendant Sexy Hair Concepts, LLC:
Roberta Jacobs-Meadway
Eckert Seamans Cherin & Mellon, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

Steven Robert Kramer
Eckert, Seamans, Cherin & Mellott LLC
10 Bank Street
White Plains, NY 10606

For Defendant The Procter and Gamble Company:
Eileen Miriam Patt
Harold Paul Weinberger
Norman Christopher Simon
Kramer, Levin , Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

Plaintiffs Salon FAD, Cindy's Hair Salon, Chu's Hair Salon, Carastro & Company Hair Design, EnV Studio Salon LLC, New Millennium Salons L.L.C. d/b/a Salon 2000, Salon 1325, Sassy & Classy Salon and Spa, The Works Hair and Nail Salon, The Veranda Salon and Spa, Inc., Victoria's Salon and Spa, William David Salon, and Vida Spa Salon bring this Lanham Act suit on behalf of a class of salons which offer for sale products that they allege are falsely advertised by the defendant manufacturers as being available for purchase only at professional salons. Because the plaintiffs have alleged facts sufficient to demonstrate both constitutional and statutory standing, and because they have alleged facts sufficient to state a claim under the Lanham Act, the defendants' motions to dismiss are denied.

## Background

The first amended class action complaint (the "Complaint") asserts three causes of action: false advertising and unfair competition under the Lanham Act, and injunctive relief. It principally asserts that the plaintiffs have suffered loss of sales and damage to their reputation and goodwill as a result of the defendant manufacturers' advertising claims that certain hair care products sold by the plaintiffs are available for

3

purchase only in salons, when in fact the products are widely available outside of salons.

Salon FAD is a non-profit organization that was formed in 2008 "to advance the interests of salons in the face of the large-scale diversion of professional products into non-professional retail channels."  "FAD" stands for "Fight Against Diversion."  The other plaintiffs are salons which sell hair products manufactured by the defendants and allegedly marketed by them as being available only in salons.  The defendants L'Oreal USA, Inc. ("L'Oreal"), Conair Corporation ("Conair"), Farouk Systems, Inc. ("Farouk"), John Paul Mitchell Systems, Sexy Hair Concepts, LLC ("Sexy Hair"), The Procter & Gamble Company ("P&G")[1], and TIGI Linea, LP ("TIGI") are manufacturers of hair products which they market and sell to salons under their respective brands.

According to the Complaint, sales of hair care products represent an important revenue source for salons; indeed, the profit margin on these products is generally higher than the margin for the hair care services provided in the salons.  The Complaint alleges that the defendants each represent, through their product labels, on company websites, and in print

---

[1] Defendant P&G claims it was improperly sued under that name; its wholly-owned subsidiary The Wella Corporation is the owner of the Sebastian trademark and the distributor of the Sebastian products, which are the products that form the basis of the plaintiffs' allegations against P&G in this suit.

4

advertisements, that their hair care products are available for purchase exclusively through salons and not through mass-market retailers such as CVS and Walgreens. For example, the label on Sexy Hair's brand of hair products, also known as Sexy Hair, states "Sold Only in Professional Salons." Other defendants represent that the quality of their products cannot be assured unless they are purchased through salons. John Paul Mitchell Systems' website states that its products "are only guaranteed when sold by a professional hair salon." According to plaintiffs, although the defendants maintain that they offer their products exclusively through salons, since at least 2000 the defendants have engaged in widespread diversion of their products to mass retailers. "Diversion" here is defined as the sale of products marketed as salon-only through stores that do not have salons on the premises. Diversion now accounts for "more than $1 billion of the beauty industry's $5 billion in annual sales of salon-only products." Plaintiffs contend that the defendants' false "salon-only" advertising damages their reputation with consumers who purchase products at their salons, only to discover that the products are also available at mass retailers.

Plaintiffs filed their original complaint on July 1, 2010. The original complaint asserted claims for false advertising and unfair competition under section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), but did not assert a claim for injunctive relief.  Each of the seven defendants filed individual motions to dismiss on August 20.  Plaintiffs subsequently amended their complaint on September 10 to add a claim for injunctive relief under 15 U.S.C. § 1116(a).  On September 23, defendant John Paul Mitchell Systems filed a motion to dismiss the plaintiffs' amended complaint.  On September 24, defendants L'Oreal, Conair, Sexy Hair, P&G, Farouk, and TIGI also filed motions to dismiss the amended complaint.

## Discussion

The defendants have moved to dismiss on three principal grounds.[2]  First, the defendants contend that the plaintiffs lack Article III standing to bring suit because the plaintiffs have failed to allege an injury that is "fairly traceable" to the defendants' false advertising; indeed, the defendants argue that the false advertising actually bolsters plaintiffs' sales, and that any reduction in sales or damage to reputation flows from the diversion itself, not from the false advertising alleged in the Complaint.  Second, the defendants assert that the plaintiffs lack statutory standing under the Lanham Act, again

---

[2] Each of the defendants has indicated that they join in the other defendants' arguments in their individual motions to dismiss.  The Court therefore will treat the seven motions to dismiss as one omnibus motion and refer to it as such.

6

because the plaintiffs have failed to identify a likelihood of injury by the defendants' false advertising. Finally, the defendants contend that the plaintiffs have not alleged the necessary elements of a false advertising claim because they have not shown that the false statements were material to consumers purchasing the defendants' products.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations. Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 475-76 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).

## Article III Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "In order to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (citation

omitted).  To establish standing, a plaintiff must show "[1] that he 'suffered an injury-in-fact -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical'; [2] that there was a 'causal connection between the injury and the conduct complained of'; and [3] that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Defendants do not dispute that plaintiffs have alleged an "injury-in-fact" that is concrete and particularized -- namely, damage to reputation and loss of sales when consumers discover that the products marketed as "salon-only" are available at mass retailers.  Defendants argue instead that plaintiffs fail to establish the second prong of the standing inquiry -- a causal connection between the injury alleged and the defendants' false advertising.

> As a rule, causation is shown if the defendants' actions had a "determinative or coercive effect" on the action that produced the injury.  Bennett v. Spear, 520 U.S. 154, 169 (1997).  Though causation is lacking if the claimed injury results from "the independent action of some third party not before the court," a plaintiff need not allege that "the defendant's actions [were] the very last step in the chain of causation" to demonstrate that the defendant's actions caused the claimed injury.  Id. It suffices that the defendant's actions had a

8

> "determinative or coercive effect upon the action of someone else" who directly caused the claimed injury. Id. Thus, causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation.

Carver, 621 F.2d at 226 (emphasis supplied). Defendants argue that any injury caused by the diversion of salon-only products to mass retailers does not flow from the false "salon-only" advertising. Instead, they argue, this advertising actually benefits the plaintiffs by encouraging consumers to purchase the products in salons. It is the act of diversion itself, rather than the false advertising at issue in the Complaint, that the defendants claim forms the basis of the plaintiffs' injury. Defendants go so far as to assert that the injuries complained of by the plaintiffs would persist even if the defendants ceased advertising the products as "salon-only," because the injuries are created by diversion.

While it is likely true that the availability of the defendants' hair care products outside of salons would reduce the plaintiffs' market share even if the false advertising ceased, the Complaint identifies an injury that is separate from the injury created by the diversion. Plaintiffs assert that their reputation is damaged because customers associate the "salon-only" advertising with the salons and therefore may stop patronizing the salons when they discover the falsity of the

9

advertising.  Defendants counter that this chain of causation is too attenuated to support Article III standing because it assumes several things:  that consumers will disbelieve the advertising; that consumers will associate the false advertising with the salons, as opposed to solely the defendants; and that this association will translate into a reluctance to patronize the salons.  Defendants rely on a decision from the Fifth Circuit, Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 301 F.3d 329 (5th Cir. 2002), in which the court found that an orthopedic surgeon who brought suit under the Lanham Act against various health maintenance organizations ("HMOs") failed to satisfy the causation requirement of Article III standing.  The surgeon in Ford alleged that his income had been reduced by the HMOs' cost-containment policies, and that these policies were established or made more onerous as a result of increased market share gained by attracting patients through false advertising. Id. at 333.  The court found that causation was too attenuated because (1) it was unclear that the surgeon's salary had declined as a result of the HMOs' cost-containment policies, rather than events unrelated to the policies at issue; and (2) it was further debatable whether increased market share would have led to an entrenchment of those policies.  Id.

Defendants' reliance on the Ford decision is unavailing, however, because the inferential leaps required to demonstrate

10

causation in Ford are far more tenuous than the causation alleged here. In contrast to Ford, plaintiffs' causation claims are fairly straightforward: it is plausible that consumers will associate false advertising claims with the seller of the product, in addition to (or instead of) the product's manufacturer. Although it is the consumer's decision that ultimately causes injury to the plaintiffs, the defendants' false statements have a "determinative or coercive effect" on the consumer's decision.

Defendants also argue that the plaintiffs lack standing because they are free to cease purchasing the defendants' products, and therefore, hold the power to avoid the injury to their reputations that the false advertising brings. If the defendants have engaged in false advertising it is unlikely that they can successfully defend this action by showing that the plaintiffs could have avoided the effect of that violation of law by exiting the market for the defendants' hair products. In any event, the plaintiffs have sufficiently alleged the existence of a causal connection between the false advertising and the injury to their reputation based on past practices to establish their standing in this lawsuit.

Plaintiffs have thus satisfied the injury-in-fact requirement of constitutional standing. For similar reasons, plaintiffs also meet the redressability requirement, since the

11

false statements at issue in this litigation are the cause of the plaintiffs' injury and thus can be remedied by a court.

## Lanham Act Standing

Section 43(a) of the Lanham Act provides

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (a)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (b)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by <u>any person who believes that he or she is likely to be damaged</u> by such act.

(Emphasis supplied).  Thus, the language of the statute seemingly extends standing to any plaintiff who "believes that he or she is likely to be damaged by" the false advertising. The Second Circuit employs prudential standing limitations, however, that narrow the class of potential plaintiffs to only those who are able to demonstrate "(1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be

12

damaged by the alleged false advertising." Famous Horse Inc. v. 5th Avenue Photo Inc., 624 F.3d 106, 113 (2d Cir. 2010). The Second Circuit has "tended to require a more substantial showing [of injury and causation] where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two.." Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994).

Defendants argue that plaintiffs fail to satisfy these prudential standing requirements for largely the same reasons they contend that plaintiffs lack Article III standing. Defendants further argue that plaintiffs lack standing to sue under the Lanham Act because they are not competitors of the defendants.

The Second Circuit recently clarified its test for Lanham Act standing in the Famous Horse decision. In that case, an operator of a chain of stores selling brand-name jeans brought a Lanham Act suit against its supplier, claiming that the supplier had sold it counterfeit jeans and then informed other customers that the chain was satisfied with its purchase even after the chain discontinued the sale of the counterfeit jeans. Famous Horse, 624 F.3d at 107-08. After determining that the chain and the supplier could be viewed as competitors, despite the fact that one sold jeans at retail and the other at wholesale, the

13

Second Circuit found that the chain had alleged a "reasonable interest" and a reasonable basis for believing that its interest could be harmed by the supplier's false advertising; the chain had an interest in maintaining its customers' "perception that its jeans, though discounted, are indeed genuine," and the supplier's false statements tended to undercut that perception. Id. at 114.

Similarly here, the plaintiffs have an interest in maintaining their reputation for integrity among their customers, including in their sales of beauty products to customers. The defendants' false advertising undermines that perception and results in an injury to the plaintiffs' reputation when customers discover that the products sold at the salons and advertised as exclusively available from salons are widely available at mass retailers.

The defendants again press the argument that the false advertising is unconnected to any injury of plaintiffs, since it is consumers' disbelief of the advertising which causes the injury. The Second Circuit recognized that disbelief could constitute injury in Famous Horse, however, when it remarked that consumers who learn of counterfeit jeans on the market will assume that the chain "similarly peddles counterfeit clothes." Id. at 114. The salons have a reasonable interest in protecting themselves from the reputational damage that they contend

14

accrues from the defendants' false advertising. Thus, plaintiffs have alleged facts sufficient to satisfy the prudential standing requirements under the Lanham Act.

### Substantive Lanham Act Claims

To establish a claim for false advertising under section 43(a) of the Lanham Act, a plaintiff must demonstrate that the statement at issue is false, by proving either that "'(1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers.'" S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997)). "It is also well-settled that, in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an 'inherent quality or characteristic' of the product." Id. This requirement is "essentially one of materiality." Nat'l Basketball Ass'n, 105 F.3d at 855.

Defendants argue that the false statements identified by the plaintiffs do not misrepresent an "inherent quality or characteristic" of the products because they relate to the marketing of the products, specifically the channels through which they are sold, which is an extrinsic characteristic. The defendants rely upon Abernathy & Closther, Ltd. v. E&M Adver.,

15

Inc., 553 F. Supp. 834, 837-38 (E.D.N.Y. 1982), which denied a motion for a preliminary injunction because the claims made in television advertisements of jewelry that the offer of sale was "an exclusive T.V. offer" and made "for the first time on TV," while false, were not actionable as false advertising claims because they did not relate to the inherent characteristics of the jewelry being offered for sale.  A more recent decision from the Southern District of New York, Telebrands Corp. v. Wilton Indus., Inc., 983 F. Supp. 471, 475 (S.D.N.Y. 1997), found that the use of the phrase "AS SEEN ON T.V." in the television advertising for a hand-held can opener was a material misrepresentation of an "inherent quality or characteristic" of the product.  The court reasoned that "'AS SEEN ON T.V.' identifies the product as the one that the consumer saw advertised, and differentiates it from other products of a similar type."  Id.

The reasoning in Telebrands is more apposite.  The false statements at issue here relate sufficiently to an inherent and material characteristic of the product to be actionable.  The statements imply that the quality of the products is so superior that they are available only through professionals in hair care.

Defendants further claim that their "salon-only" advertising is unlikely to have a material effect on consumers' purchasing decisions.  They rely on the Second Circuit's

16

National Basketball Association opinion, in which the court found that although an advertising claim that basketball scores were direct "from the arena" was false because the scores in fact came from broadcasts, rather than first-hand observation, that falsity was immaterial "minutiae" that would not influence consumers.  Nat'l Basketball Ass'n, 105 F.3d at 855.  By contrast, here the claim that the defendants' products are sold only in salons goes directly to a highly relevant aspect of the product.  The "salon-only" claim differentiates these products from products sold at mass retailers and also indicates the "superiority and cache [sic] of the professional products."  Consumers may be willing to pay a premium for products sold exclusively through salons because they associate these products with professional expertise.  Thus, plaintiffs have alleged facts sufficient to show that the false advertising claims are material to consumers' purchasing decisions.

## Conclusion

The defendants' September 23 and 24 motions to dismiss are denied.

SO ORDERED:

Dated:   New York, New York
         January 10, 2011

_____
DENISE COTE
United States District Judge